UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-168** |
| **HARRY SMOOT** | **SECTION I** |

### ORDER AND REASONS

The Court has pending before it objection nine filed by defendant, Harry Smoot ("Smoot"), to his presentence investigation report.[1] For the following reasons, the objection is overruled.

### BACKGROUND

On May 7, 2015, defendant, Harry Smoot, pleaded guilty with a plea agreement to counts one and two of the superseding indictment.[2] Count one charged Smoot and others with conspiracy to distribute and/or to possess with the intent to distribute one kilogram or more of heroin and/or 280 grams or more of cocaine base.[3] Count two charged Smoot and others with conspiracy to possess firearms in furtherance of drug trafficking crimes as alleged in the superseding indictment.[4]

Smoot filed objections to the draft PSR, some of which were sustained in the final PSR and first addendum.[5] The Court directed Smoot to submit any renewed objections and directed the government to respond to such renewed objections.[6] The Court received submissions from both Smoot and the government. The Court has also held a telephone status conference with counsel for

---

[1] Smoot's remaining objections were addressed on the record at his sentencing hearing.
[2] R. Doc. No. 292.
[3] R. Doc. No. 174, at 2.
[4] R. Doc. No. 174, at 2-3.
[5] R. Doc. No. 493.
[6] R. Doc. No. 588.

1

Smoot and the government at which time counsel indicated that many of the objections had been jointly resolved.[7] Subsequently, the probation office issued a revised final PSR and a second addendum.[8]

## LAW AND ANALYSIS

Smoot objects to the portions of his PSR applying a cross-reference to the first degree murder guideline with respect to the killings of Willie Odom and Shanna Girod during the course of the conspiracies. Smoot argues that the cross-reference should have been made to second degree murder as to both Odom and Girod, although he concedes that the cross-reference to first degree murder with respect to the killing of Doreth Richardson is correct.

### A.    Standard of Law

The Fifth Circuit has explained the relevant burdens of proof with respect to sentencing factors and the Court's authority to rely on the factual findings of the PSR:

> The government must prove factors for enhancement of sentencing by a preponderance of the evidence, and a presentencing report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines. The district court may adopt the facts contained in a presentence report without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable. The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue.

*United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (internal quotation marks, citations, and alterations omitted).

---

[7] R. Doc. No. 608.
[8] R. Doc. No. 615.

**B.     Smoot's Offense Level Calculation**

For the purpose of calculating the offense level, the PSR grouped Smoot's two counts of conviction into three groups: Group One, based on the killing of Willie Odom, Group Two, based on the killing of Shanna Girod, and Group Three, based on the killing of Doreth Richardson.

As to Group One, the revised final PSR applied U.S.S.G. § 2D1.1(d)(1), which states that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under"§ 2D1.1. The offense level, if it was determined under § 2D1.1, would have been 40, which is less than the offense level of 43 pursuant to § 2A1.1, the guideline for first degree murder. The revised final PSR therefore cross-referenced to the first degree murder guideline and started with an initial base offense level of 43. The revised final PSR then added a four level leadership role enhancement pursuant to § 3B1.1(a) to arrive at an adjusted offense level of 47.

As to Group Two and Group Three, the revised final PSR applied USSG § 2K2.1(c)(1)(B), which states that if "the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, apply—if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide, if the resulting offense level is greater than that determined above." The offense level as to both Group One and Group Two, if it was determined under § 2K2.1, would have been 18, which is less than

the guideline for first degree murder. Accordingly, the revised final PSR cross-referenced to § 2A1.1, the guideline for first degree murder, as to both Group Two (Girod) and Group Three (Richardson), and calculated an initial offense level of 43 as to both groups. The revised final PSR then added a two level obstruction of justice enhancement pursuant to § 2C1.1 as to Group Two only, and it arrived at an adjusted offense level of 45 as to Group Two and 43 as to Group Three.

The revised final PSR then applied USSG § 3D1.4 to add three offense levels to the highest offense level of the three groups for a total offense level of 50. Finally, after a three level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, the revised final PSR calculated Smoot's offense level as 47. Pursuant to the application note 2 to the commentary to the sentencing table, "an offense level of more than 43 is to be treated as an offense level of 43." Combined with his criminal history category of 1, Smoot's guidelines range is a restricted range of life imprisonment as to count I with a concurrent twenty year term of imprisonment as to count 2.

## C.     First Degree versus Second Degree Murder

The United States Code defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). As relevant to this issue, first degree murder is murder "perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing" or "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed." *Id.* Any other murder is second degree murder. *See id.*

"Section 1111 retains a common law distinction between second degree murder, which requires a killing with malice aforethought, and first degree murder, which in addition to malice aforethought requires a killing with premeditation and deliberation." *United States v. Shaw*, 701 F.2d

367, 392 (5th Cir. 1983). "Although it is clear that deliberation and premeditation under § 1111 involve a prior design to commit murder, no particular period of time is necessary for such deliberation and premeditation." *Id.* "The distinction which marks the line between 'deliberation' sufficient to support a conviction of first degree murder and the lesser killing with malice which supports conviction of second degree murder is less than clear." *Id.* at 393. The Fifth Circuit has held that deliberation "requires a 'cool mind' that is capable of reflection" and that premeditation "requires that the one with the 'cool mind' did, in fact, reflect, at least for a short period of time before his act of killing." *See id.* at 393. "There must be some appreciable time for reflection and consideration before execution of the act, although the period of time does not require the lapse of days or hours or even minutes." *Id.* (internal quotation marks omitted).

### D.    The Factual Record

In his factual basis, Smoot swore to the following factual account of the shooting of Girod and Odom:

> SMOOT was present for the shooting of Shanna Girod and Willie Odom. SMOOT's Draco AK-47, which was purchased by SMOOT at Donovan Guns & Ammo LLC was used, but SMOOT was not the shooter. SMOOT drove the vehicle from which the shots that killed Girod and Odom were fired.[9]

The PSR states the following version of the shooting of Odom and Girod:

> On August 18, 2012, [co-defendant Isaac] Smith and Smoot were riding in Smoot's Nissan Titan. Smith observed Willie Odom drive past them in a green Honda Accord. Smith directed Smoot to drive next to Odom's vehicle so that Smith could get a shot at Odom. Smoot pulled on the left side of Odom's vehicle, which was stopped at a red light. Smith, seated in the front passenger seat, pulled out a Draco AK-47 and fired at Willie Odom. Although not known at the time, Shanna Girod (Girod) was seated in the front passenger seat of the vehicle. LEO determined that Girod was a love interest of Singleton and Odom was a rival drug dealer. Girod and

---

[9] R. Doc. No. 294, at 5.

367, 392 (5th Cir. 1983). "Although it is clear that deliberation and premeditation under § 1111 involve a prior design to commit murder, no particular period of time is necessary for such deliberation and premeditation." *Id.* "The distinction which marks the line between 'deliberation' sufficient to support a conviction of first degree murder and the lesser killing with malice which supports conviction of second degree murder is less than clear." *Id.* at 393. The Fifth Circuit has held that deliberation "requires a 'cool mind' that is capable of reflection" and that premeditation "requires that the one with the 'cool mind' did, in fact, reflect, at least for a short period of time before his act of killing." *See id.* at 393. "There must be some appreciable time for reflection and consideration before execution of the act, although the period of time does not require the lapse of days or hours or even minutes." *Id.* (internal quotation marks omitted).

**D.    The Factual Record**

In his factual basis, Smoot swore to the following factual account of the shooting of Girod and Odom:

> SMOOT was present for the shooting of Shanna Girod and Willie Odom. SMOOT's Draco AK-47, which was purchased by SMOOT at Donovan Guns & Ammo LLC was used, but SMOOT was not the shooter. SMOOT drove the vehicle from which the shots that killed Girod and Odom were fired.[9]

The PSR states the following version of the shooting of Odom and Girod:

> On August 18, 2012, [co-defendant Isaac] Smith and Smoot were riding in Smoot's Nissan Titan. Smith observed Willie Odom drive past them in a green Honda Accord. Smith directed Smoot to drive next to Odom's vehicle so that Smith could get a shot at Odom. Smoot pulled on the left side of Odom's vehicle, which was stopped at a red light. Smith, seated in the front passenger seat, pulled out a Draco AK-47 and fired at Willie Odom. Although not known at the time, Shanna Girod (Girod) was seated in the front passenger seat of the vehicle. LEO determined that Girod was a love interest of Singleton and Odom was a rival drug dealer. Girod and

---

[9] R. Doc. No. 294, at 5.

> Odom died from the gun shots fired by Smith. The Draco AK-47 was purchased by and belonged to Smoot. LEO learned that Smith and Odom had a fight prior to the murders.[10]

The PSR appears to rely on the factual basis of Isaac Smith[11] with respect to this incident. Although it has since become clear that Smith falsely inculpated co-defendant Lance Singleton for the shooting of Girod and Odom, the government contends that "Smith's prior statement was not invented out of whole cloth; it was accurate but for the critical fact that Smith, not Singleton, was the shooter."

The government also submitted without objection a Jefferson Parish Sheriff's Office report with respect to the investigation into the shooting deaths of Willie Odom and Shanna Girod. The report states that investigators found "numerous" bullet holes in the side of Odom's vehicle. The report also states that investigators recovered fourteen 7.62x39mm cartridge cases from a 410-foot span of Lapalco Boulevard.

**E.    The Parties' Arguments and Analysis**

In his objection, Smoot tersely contends that his factual basis did not "describe first degree murders [with respect to Girod and Odom], as there is no indication of malice aforethought." In his sentencing memorandum, Smoot expands on his position and argues that "the requisite element of premeditation was not present" and therefore the cross-reference should have been to second degree murder, not first degree murder. Smoot contends that Smith is not a credible witness and that his version of the shooting cannot be relied upon. Therefore, Smoot argues that the undisputed record does not "permit one to infer that [Smoot] had a cool mind that in fact reflected on what Isaac Smith

---

[10]R. Doc. No. 615, ¶ 71.
[11]R. Doc. No. 208.

6

was about to do," and that the cross-reference should therefore have been to second degree murder, not first degree murder.

The government responds that Smith's factual account of the shooting can be credited with Smith (not Singleton) as the shooter. Furthermore, the government argues that the requisite deliberation and premeditation can be inferred based on the evidence that Smoot, as the driver, kept even with Odom's vehicle for over four hundred feet as Smith fired multiple rounds from the AK-47. The government also argues that "Smoot must have been aware that Smith intended to shoot Odom well before the shooting started," based on the fact that Smoot would have had to bring his vehicle into position parallel to Odom's vehicle while Smith was readying the AK-47 to fire.

The Court finds the government's response to be persuasive and, accordingly, overrules Smoot's objection. Although Smith's credibility as a witness is severely compromised, the factual version of the shooting he initially provided (other than with respect to the identity of the shooter) is consistent with Smoot's version and with the forensic evidence submitted by the government. It is undisputed that Smoot was the driver of the vehicle and it is undisputed that Smith used Smoot's AK-47. The unrebutted report of the JPSO establishes that the shooting occurred between moving vehicles, that the shooting was sustained over at a 410-foot distance, and that Smith fired at least 14 rounds at Odom's vehicle while Smoot drove alongside at least for the distance stated in the police report.[12] These facts support an inference by a preponderance of the evidence that Smoot and Smith made a deliberate, premeditated, and sustained attempt to kill Odom, and in doing so succeeded in killing both Odom and Girod. Accordingly, the PSR correctly cross-referenced Group One and Group Two to the first degree murder guideline when calculating Smoot's offense level. The

---

[12]Smoot and Smith also took subsequent steps to destroy the AK-47 used in the shooting.

objection is overruled.

The Court notes, however, that even if this objection were sustained it would not change Smoot's ultimate guidelines calculation. Smoot concedes that the murder of Doreth Richardson was correctly cross-referenced to § 2A1.1 as a first degree murder. If his objection were sustained and the Odom and Girod murders were cross-referenced to the second degree murder guidelines, then the Richardson murder, with its adjusted offense level of 43, would be the highest the offense level for the purposes of grouping pursuant to § 3D1.4. With three levels added pursuant to § 3D1.4, and three levels subtracted for acceptance of responsibility pursuant to § 3E1.1, Smoot's final offense level would still be 43, which combined with his criminal history category of I, would still result in a restricted guideline range of life imprisonment as to count 1 and 20 concurrent years as to count 2.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Smoot's objection 9 is **OVERRULED**.

New Orleans, Louisiana, February 18, 2016.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**